**[Cite as *In re E.D.,* 194 Ohio App.3d 534, 2011-Ohio-4067.]**

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT       )

In re E.D.                                C.A. No.     25594


                                          APPEAL FROM JUDGMENT
                                          ENTERED IN THE
                                          COURT OF COMMON PLEAS
                                          COUNTY OF SUMMIT, OHIO
                                          CASE No.      DL 10 05 1275
                                          DL 10 05 1277


APPEARANCES:

    Sherri Bevan Walsh, Summit County Prosecuting Attorney,
    and Richard S. Kasay, Assistant Prosecuting Attorney, for appellant.

    J. Dean Carro, Appellate Review Office, School of Law, University of Akron,
    and, Joseph Kodish, for appellee.


DECISION AND JOURNAL ENTRY

Dated: August 17, 2011

---

MOORE, Judge.

**{¶ 1}** Appellant, the state of Ohio, appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division. This court affirms.

I

**{¶ 2}** E.D. was arrested for loitering for the purpose of engaging in drug-related activity on May 3 and May 7, 2010, in violation of Akron Codified Ordinance ("A.C.O.") 138.26, a misdemeanor of the fourth degree if committed by an adult. On July 21, 2010,

E.D. filed a motion asking the juvenile court to find A.C.O. 138.26 unconstitutional and to dismiss all charges. The trial court entered an order on August 24, 2010, dismissing E.D.'s charges and finding the ordinance unconstitutionally void for vagueness and overbroad.

{¶ 3} The state timely filed a notice of appeal and raises one assignment of error for our review.

II

ASSIGNMENT OF ERROR

The trial court erred in finding Akron Codified Ordinance 138.26 unconstitutional[.]

{¶ 4} The state argues that the trial court erred in finding A.C.O. 138.26 unconstitutional. We do not agree.

{¶ 5} A former version of A.C.O. 138.26 was found unconstitutional by the Supreme Court of Ohio in *Akron v. Rowland* (1993), 67 Ohio St.3d 374, because it was overbroad, void for vagueness, and being enforced arbitrarily against minorities. It read as follows:

(A) No person shall loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity contrary to any of the provisions of R.C. Chapter 2925.

(B) Among the circumstances which may be considered in determining whether such purpose is manifested are:

(1) Such person is a known unlawful drug user, possessor, or seller. For purposes of this chapter, a "KNOWN UNLAWFUL DRUG USER, POSSESSOR, OR SELLER" is a person who has, within the knowledge of the arresting officer, been convicted in any court within this state of any violation involving the use, possession, or sale of any controlled substance as defined in R.C. Chapter 2925, or such person has

been convicted of any violation of any of the provisions of R.C. Chapter 2925 or substantially similar laws of any political subdivision of this state or of any other state; or a person who displays physical characteristics of drug intoxication or usage, such as needle tracks, burned or calloused thumb and index fingers, underweight, or nervous and excited behavior;

(2) Such person is currently subject to a court order prohibiting his presence in a high drug activity geographic area;

(3) Such person behaves in such a manner as to raise a reasonable suspicion that he is about to engage in or is then engaged in an unlawful drug-related activity, including, by way of example only, such person acting as a lookout or hailing or stopping cars;

(4) Such person is physically identified by the officer as a member of a gang or association which has as its purpose illegal drug activity;

(5) Such person transfers small objects or packages in a furtive fashion;

(6) Such person takes flight or manifestly endeavors to conceal himself upon the appearance of a police officer;

(7) Such person manifestly endeavors to conceal any object which reasonably could be involved in an unlawful drug-related activity;

(8) Such person possesses any instrument, article, or thing whose customary or primary purpose is for the sale, administration, or use of controlled subjects [sic, substances] such as, but not limited to, crack pipes, push wires, chore boys, hand scales, hypodermic needles, razor blades, or other cutting tools;

(9) The area involved is by public repute known to be an area of unlawful drug use and trafficking;

(10) The premises involved are known to the defendant to have been reported to law enforcement as a place of drug activity pursuant to R.C. Chapter 2925;

(11) Any vehicle involved is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity.

(C) If any provision of this section is held invalid, such invalidity shall not affect any other provision, or the application thereof, which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.

(D)  Whoever violates this section is guilty of loitering for the purpose of engaging in drug-related activity, a misdemeanor of the fourth degree.

{¶ 6}  In response to *Rowland*, the Akron City Council made numerous modifications and enacted a revised ordinance, A.C.O. 138.26.  The revised version reads as follows:

A.  Prohibition. No person shall loiter or remain in or near any public thoroughfare or place open to the public, and engage in conduct which reasonably manifests his or her specific intent and purpose to engage in drug-related activity contrary to any of the provisions of Chapter 2925 of the Ohio Revised Code or Chapter 138 of this code.

B.  Circumstances. The circumstances which shall be considered in determining whether such intent or purpose has been manifested, and three or more of which must be found under circumstances in which the activity of the person reasonably manifests his or her specific intent and purpose to engage in drug-related activity contrary to any of the provisions of Chapter 2925 of the Ohio Revised Code or Chapter 138 of this code are:

1.  The person is a known unlawful drug user, possessor, or seller. For purposes of this section, a "known unlawful drug user, possessor, or seller" is a person who, within the knowledge of the arresting officer, has been convicted in any court in the state of Ohio of any violation involving the use, possession, or sale of any controlled substance as defined in Chapter 2925 of the Ohio Revised Code, or the person has been convicted of any violation of any of the provisions of the Ohio Revised Code or substantially similar laws of any political subdivision of the state of Ohio, or of any other state;

2.  The person displays the physical characteristics of drug intoxication;

3.  The person is currently subject to a court order prohibiting his or her presence in a high drug activity geographic area, and that fact is known to the arresting officer;

4.  The person is physically identified by an officer as a member of a gang, or association which has as its purpose illegal drug activity;

5.  The person repeatedly passes to or receives from passers-by or bystanders money and/or objects, the characteristics of which are consistent with drug material the possession, sale, and distribution of which is proscribed or limited by Chapter 2925 of the Ohio Revised Code or Chapter 138 of this code, whether the passers-by or bystanders are on foot or in motor vehicles;

6. The person takes flight, or manifestly endeavors to conceal himself or herself upon the appearance of the police;

7. The person manifestly endeavors to conceal any object, the characteristics of which are consistent with drug material the possession, sale, and distribution of which is proscribed or limited by Chapter 2925 of the Ohio Revised Code or Chapter 138 of this code, and reasonably appears to have been involved in unlawful drug-related activity;

8. The person to the observation of officers possesses any instrument, article, or thing, the customary or primary use of which is the sale, administration, or use of controlled substances, including, but not limited to, crack pipes, push wires, chore boys, hand scales, or hypodermic needles, and which is uniquely designed, constituted or modified for use with controlled substances;

9. The area involved is by public repute and to the knowledge of the arresting officer an area in which unlawful drug use and trafficking occurs on a frequent and regular basis. Probable cause shall not be established, and an arrest pursuant to this section shall not be justified solely on the basis that the person is present in a reputed drug use or trafficking area absent the existence of other circumstances which justify the arrest; and

10. The premises involved are known to the person to have been reported to law enforcement authorities as a place of drug activity under Chapter 2925 of the Ohio Revised Code or Chapter 138 of this code, and the existence of that knowledge is known by the arresting officer.

C. Background of Person or Neighborhood. The race or ethnic background of a person and/or the racial or ethnic makeup of the area or neighborhood within which he or she is located shall not be considered in determining a person's specific intent under this section.

D. Explanation Opportunity. No person shall be arrested under this section until he or she has been afforded the opportunity by the law enforcement officers to explain his or her activity, and to indicate to officers why his or her activity should not be construed to manifest specific purpose and intent of illegal drug activity. This opportunity shall be exercised by the person at his or her option, and nothing in this subsection shall be interpreted so as to require the person to make any statement to officers. The failure of a person to avail himself or herself of the opportunity to explain his or her activity shall not be construed or utilized as a factor in the determination of his or her specific intent and purpose to engage in illegal drug activity.

E. Review Committee Membership Rules. Within a period not to exceed thirty days after the effective date of the ordinance codified in this section, an Anti-drug Loitering Ordinance Review Committee shall be appointed by the City Council. This committee shall be composed of two qualified electors of the city

who shall not be officers or employees of the city and the city of Akron Director of Public Safety, a member of the Akron Police Department and the chairman of the Akron City Council Public Safety Committee. The initial terms of the members of the committee who are qualified electors shall be one and two years. Thereafter, the members of the committee shall be appointed to two year terms. Vacancies on the committee shall be filled in the manner of initial appointments, and any member so appointed shall serve the balance of the term of the vacancy. The committee may adopt any rules for its procedure as it deems appropriate, and which are not in conflict with the Charter and ordinances of the city.

Committee Functions. The Anti-drug Loitering Ordinance Review Committee shall compile and maintain records and statistics on the number of arrests made under this section, and convictions and other dispositions which result from those arrests, and the manner of enforcement of this section, with particular reference to any way in which this section may be disparately utilized and enforced on the basis of the racial or ethnic background of individuals, or the racial or ethnic makeup of areas of neighborhoods. Such statistics shall include the names of the arresting officers, location of arrests and circumstances utilized to find probable cause. The committee, at the conclusion of each calendar quarter, and at any other times as it deems appropriate, shall make reports to the Council as to the implementation and enforcement of this section, its use, its effectiveness, and any way in which this section has been disparately utilized or enforced on the basis of the racial or ethnic background of individuals or the racial or ethnic makeup of areas or neighborhoods.

Limit on Committee Functions. The committee shall have no authority to hear and/or mediate complaints lodged in relation to the enforcement or use of this section, but shall refer all such complaints lodged in relation to this section to the Human Relations Commission of the city for further review, mediation, and report.

Relationship with Human Relations Committee. Members of the committee shall be ex-officio members of the Human Relations Commission of the city and membership in either body shall not affect his or her concurrent membership in the other body.

F. Invalidity. If any provision of this section is held to be invalid, that invalidity shall not effect any other provision of this section, or the application of this section, which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.

G. Penalty. Whoever violates this section is guilty of loitering for the purpose of engaging in drug-related activity, a misdemeanor of the fourth degree.

**{¶ 7}** The changes included adding a specific intent requirement, removing unnamed circumstances as grounds for arrest and conviction, and requiring the presence of at least three of the listed circumstances to support arrest and conviction. The state contends that these revisions correct the deficiencies of overbreadth and vagueness, and that the ordinance is now constitutional.

**{¶ 8}** This court reviews constitutional challenges de novo. *State v. Honey*, 9th Dist. No. 08CA0018-M, 2008-Ohio-4943, at ¶ 4. We recognize a strong presumption that legislative enactments are constitutional, and before we will declare a statute unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provision are clearly incapable of coexisting." *State v. Gill* (1992), 63 Ohio St.3d 53, 55, citing *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, paragraph one of the syllabus. See also *State v. Cook* (1998), 83 Ohio St.3d 404, 409.

Vagueness

**{¶ 9}** In considering a challenge to an ordinance as void for vagueness, a court is required to determine whether the statute "(1) provides sufficient notice of its proscriptions to facilitate compliance by persons of ordinary intelligence and (2) is specific enough to prevent official arbitrariness or discrimination in its enforcement" *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, at ¶ 84. A statute does not need to avoid all vagueness, and is not void for vagueness simply because it could have been worded more precisely or with additional certainty. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, citing *Roth v. United States* (1957), 354 U.S. 476. See *Grayned v. Rockford* (1972), 408 U.S. 104, 108.

Rather, the "critical question in all cases is whether the law affords a reasonable individual of ordinary intelligence fair notice and sufficient definition and guidance to enable him to conform his conduct to the law." *Norwood* at ¶ 86. See also *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 607; *Coates v. Cincinnati* (1971), 402 U.S. 611, 614; *Colten v. Kentucky* (1972), 407 U.S. 104, 110.

{¶ 10} In *Rowland*, the Ohio Supreme Court held the former version of A.C.O. 138.26 to be unconstitutionally vague because it failed to give "reasonable notice to citizens of what is prohibited" and failed to provide "reasonable standards for those charged with its enforcement." *Rowland*, 67 Ohio St.3d at 382, 618 N.E.2d 138. The prior enactment prohibited public loitering "in a manner and under circumstances manifesting the purpose to engage in drug-related activity." A.C.O. 138.26. The court took issue with the fact that an ordinary person reading the act "could not be sure what specific acts 'manifest' illegal activity." *Rowland*, 67 Ohio St.3d at 383. The former version of subsection (B) provided examples of behaviors that manifest drug activity. The use of the word "among" indicated that there were "other circumstances, not specified in the ordinance, which may be used to form the basis of an arrest and conviction." Id. The Ohio Supreme Court held this "lack of specificity to be fatal to the ordinance." Id. Thus, the former version of A.C.O. 138.26 failed, in part, because it failed to provide citizens adequate notice of what conduct is illegal.

{¶ 11} In addition, the Ohio Supreme Court held the provision to be impermissibly vague because "the police and the courts [were] given unfettered discretion to determine whether a person's conduct 'manifests' drug activity." *Rowland*, 67 Ohio St.3d at 384.

Specifically, the court held that "most of the eleven enumerated 'circumstances' " that manifest drug activity were "extremely indefinite (*e.g.,* 'a person * * * displays physical characteristics of drug intoxication or usage, such as * * * [being] underweight, or [exhibiting] nervous and excited behavior,' a 'person behaves in such a manner as to raise a reasonable suspicion that he is about to engage * * * in an unlawful drug-related activity,' and the 'area involved is by public repute known to be an area of unlawful drug use and trafficking')" and that the police and courts were permitted to consider other unidentified circumstances. Id. The Ohio Supreme Court noted, "[I]t is important to remember that a person does not have to *commit* a drug-related offense to violate the ordinance. The ordinance is prophylactic: it permits police to make an arrest before any crime has occurred." Id. at 386.

{¶ 12} In response to *Rowland*, the Akron City Council made numerous modifications to the statute. First, there is now the inclusion of a "specific intent" element. A.C.O. 138.26(A). Specifically, a person shall not "engage in conduct which reasonably manifests his or her specific intent and purpose to engage in drug-related activity." Id. In addition, the ordinance no longer allows an arrest or conviction for unnamed circumstances. The phrase "[a]mong the circumstances which may be considered" has been replaced with "[t]he circumstances which shall be considered." The ordinance requires that three of the ten enumerated circumstances be present to support arrest and conviction. A.C.O. 138.26(B). Finally, the ordinance no longer contains the language that was expressly criticized by the Ohio Supreme Court, specifically, reference to a person's appearing underweight or nervous and excited, a

person behaving in a manner that raises reasonable suspicion that he is engaging in unlawful drug-related activity – such as acting as a lookout or hailing cars – and the ordinance now requires personal knowledge by the officer that the area is known by the public to be an area of unlawful drug use and trafficking. The state argues that these revisions save the ordinance from being found unconstitutionally void for vagueness.

{¶ 13} The state emphasizes the addition of a "specific intent" element. However, the "specific intent" addition does not clearly specify what conduct an individual has the specific intent to engage in. Instead, the ordinance prohibits conduct that "reasonably manifests" the "specific intent * * * to engage in drug-related activity." A.C.O. 138.26(A). The ordinance goes on to state the circumstances that will determine whether such "specific intent * * * has been manifested." Id. Acting under circumstances manifesting a "specific intent" is not equivalent to specifically intending to engage in an act. See *Rowland*, 67 Ohio St.3d at 380.

{¶ 14} Next, the state stresses the revisions to the listed "circumstances" that are to be considered in determining whether the offender has reasonably manifested the "specific intent and purpose to engage in drug-related activity" and contends that the ordinance no longer suffers from the former lack of specificity. The former ordinance allowed for consideration of 11 enumerated circumstances, as well as other unnamed circumstances. The new ordinance limits consideration to only the ten enumerated circumstances and requires a finding of three or more to be present to support arrest and conviction. Although the revision addresses, in part, the "notice to citizens" concerns that the Ohio Supreme Court had, the enumerated circumstances still lack the necessary

specificity to ensure that the police and courts are not "given unfettered discretion to determine whether a person's conduct 'manifests' drug activity." *Rowland*, 67 Ohio St.3d at 384.

{¶ 15} A law may be found impermissibly vague if it lacks reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement. *Smith v. Goguen* (1974), 415 U.S. 566, 573. In *Rowland*, the Supreme Court took issue with the fact that the officers and courts were allowed to consider unnamed circumstances, as well as with the fact that "most of the eleven enumerated 'circumstances' [were] extremely indefinite." Id*.*, 67 Ohio St.3d at 384. The revisions to the ordinance fail to correct the indefiniteness.

{¶ 16} Revised A.C.O. 138.26(B)(2) provides for the arrest of a person "display[ing] the physical characteristics of drug intoxication." In *Rowland*, the Ohio Supreme Court expressly criticized similar language and found it to be extremely indefinite. *Rowland*, 67 Ohio St.3d at 384, 618 N.E.2d 138. The prior version of A.C.O. 138.26(B) provided for the arrest of "a person who displays physical characteristics of drug intoxication or usage, such as needle tracks, burned or calloused thumb and index fingers, underweight, or nervous and excited behavior." The Ohio Supreme Court found the prior version to be extremely indefinite, and the current version fails to provide constitutionally cognizable guidance as to the "physical characteristics of drug intoxication." *Rowland*, 67 Ohio St.3d at 384. The revised subsection fails to correct the indefiniteness and remains unclear.

{¶ 17} The statute as revised at A.C.O. 138.26(B)(3) provides for arrest if the person is "currently subject to a court order prohibiting his or her presence in a high drug activity geographic area, and that fact is known to the officer." The ordinance, however, fails to provide guidance as to how a citizen is to determine whether the area is known to the officer as a "high drug activity geographic area." In addition, the Ohio Supreme Court expressly stated that the prior version (the "area involved is by public repute known to be an area of unlawful drug use and trafficking") was extremely indefinite. *Rowland*, 67 Ohio St.3d at 384. Without guidance, citizens, officers, judges and juries are forced to speculate as to what is included.

{¶ 18} A.C.O. 138.26(B)(4) as revised, provides for the arrest of person who is "physically identified by an officer as a member of a gang." As the trial court found, there is no guidance as to what characteristics would inform an officer that an individual is a member of a gang, and citizens are not provided with notice. The subsection is nearly identical to the prior version and remains unclear.

{¶ 19} A.C.O. 138.26(B)(7) as revised, provides for the arrest of a person who attempts to conceal a drug-related object that "reasonably appears to have been involved in unlawful drug-related activity." The trial court found this subsection to be impermissibly vague because there is no guidance for officers to determine that a person "reasonably appears to have been involved in unlawful drug-related activity." We agree that this section remains unclear and does not provide citizens with the required notice.

{¶ 20} A.C.O. 138.26(B)(9) as revised provides for the arrest of a person found in "an area in which unlawful drug use and trafficking occurs on a frequent and regular

basis." The trial court correctly found this subsection to be impermissibly vague because it fails to provide guidance as to how one might reasonably determine whether an "area involved is by public repute and to the knowledge of the arresting officer an area in which unlawful drug use and trafficking occurs on a frequent and regular basis." In addition, revised A.C.O. 138.26(B)(10) provides for the arrest of a person who has knowledge that the premises involved has "been reported to law enforcement authorities as a place of drug activity." Again, there is no notice as to the manner in which a citizen or officer determines whether the area involved is a place of prior drug activity. In addition, the provision does not provide guidance as to the manner in which the officer is to determine whether the person has knowledge of such. Because the above subsections remain unclear, citizens are not provided with adequate notice of which conduct is illegal.

{¶ 21} A law may also be void for vagueness "when it 'delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " *Rowland*, 67 Ohio St.3d at 383-384, 618 N.E.2d 138. The state argues that subsection (C) of the revised ordinance "expressly forbids racial or ethnic considerations in determining specific intent." In addition, it contends that subsection (E) now requires the formation of a review committee to monitor enforcement to determine "if any disparate enforcement is occurring." The state also argues that the revised ordinance does not have the same potential for arbitrary or selective enforcement because unnamed circumstances can no longer be used for enforcement. However, revised A.C.O. 138.26 still allows officers to subjectively determine whether a citizen exhibits the above "characteristics" and thus

"are given unfettered discretion to determine whether a person's conduct 'manifests' drug activity." *Rowland*, 67 Ohio St.3d at 384. This invites arbitrary and discriminatory enforcement and renders the ordinance unconstitutionally void for vagueness.

Overbreadth

{¶ 22} As the Ohio Supreme Court stated in *Rowland*, " '[a] clear and precise enactment may * * * be "overbroad" if in its reach it prohibits constitutionally protected conduct.' * * * In considering an overbreadth challenge, the court must decide 'whether the ordinance sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments.' " Id. at 387, quoting *Grayned*, 408 U.S. at 114-115. The challenged statute must be substantially overbroad to be invalidated on its face. *Rowland* at 387, quoting *Houston v. Hill* (1987), 482 U.S. 451, 458. In addition, "the party challenging the enactment must show that its potential application reaches a significant amount of protected activity. Nevertheless, criminal statutes 'that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application.' " *Rowland* at 387, quoting *Houston* at 459.

{¶ 23} In *Rowland*, the Ohio Supreme Court refused to read into the ordinance a "specific intent" element because it was not found in the language of the ordinance and because it was irreconcilable with the language of the ordinance. *Rowland* at 380. The revised version of the statute added a "specific intent" element. However, this addition does not sufficiently limit the statute to prevent it from being overbroad.

{¶ 24} In *Rowland*, the Ohio Supreme Court held, "Each of the eleven circumstances, with the possible exception of subsections (B)(2) and (B)(8), describe

status or conduct which can be innocent and may be protected under the Constitution." *Rowland*, 67 Ohio St.3d at 387. The court expressed concern with the circumstances that could be considered — whether the suspect looks like a drug user, the suspect behaves suspiciously, including hailing or stopping cars, the suspect is a gang member, the suspect transfers small packages or objects, the suspect attempts to hide from police, the suspect is in an area that is known to be an unlawful drug use area, or a vehicle involved is registered to a known drug user. Id. The court concluded, "These circumstances, and others in the ordinance, can easily implicate a person's status, associates, mere presence, or otherwise innocent behavior. We feel that they encroach on a 'substantial amount of constitutionally protected conduct.' " Id., quoting *Hill*, 482 U.S. at 459.

{¶ 25} Revised A.C.O. 138.26 still allows, and in fact requires, officers to take into consideration enumerated circumstances "which can be innocent and may be protected under the Constitution." *Rowland*, 67 Ohio St.3d at 387, 618 N.E.2d 138. As discussed above, many of the "circumstances" remain unchanged from the prior version. As in the prior version, officers are able to take into consideration the fact that a person has a prior drug conviction, is located in a high drug-activity geographic area, displays physical characteristics of drug intoxication, is physically identified as a member of a gang, takes flight, or repeatedly passes objects to passers-by or bystanders. The Ohio Supreme Court took issue with the consideration of these potentially innocent and constitutionally protected circumstances. Even though the ordinance now requires that at least three of these circumstances be present, the fact remains that three innocent and constitutionally protected circumstances could "manifest" the intent to engage in drug-related activities

even where no such intent actually exists. The trial court noted that the revised ordinance "is very likely to encompass constitutionally protected conduct. In application, if a person previously convicted of a drug-related crime who lives in 'high drug activity geographic area' while walking home attempts to avoid a police officer because of previous negative interactions, then he or she may be arrested and convicted of violating A.C.O. §138.26 even if at the time of the incident the person was not involved in any drug-related activity." The fact also remains that " '[e]ven if the [offender] were acquitted due to lack of evidence of intent, an arrest would be justified under the statute, and the arrest itself chills first amendment rights.' " *Rowland* at 388, quoting *Coleman v. Richmond* (1988), 5 Va.App.459, 465.

{¶ 26} The Supreme Court has recognized an individual's freedom of association in two ways: (1) the freedom "to enter into and maintain certain intimate human relationships" and (2) the "right to associate for the purpose of engaging in those activities protected by the First Amendment." *Roberts v. U.S. Jaycees* (1984), 468 U.S. 609, 617-618; *Dallas v. Stanglin* (1989), 490 U.S. 19, 24. The Ohio Supreme Court analyzed an individual's freedom of association in *State v. Burnett* (2001), 93 Ohio St.3d 419. In *Burnett*, Cincinnati passed an ordinance that created drug-exclusion zones, and if a person was convicted of committing a drug offense in these areas, he was automatically banned from traveling within the zone for one year. Id. at 420. The court found that the ordinance did not implicate the First Amendment's freedom of association, but was unconstitutional because it unlawfully restricted a person's right to freedom of travel. Id. at 425.

{¶ 27} The ordinance in *Burnett* allowed a person to obtain a variance "for reasons relating to [his] health, welfare, or well-being, * * * or for drug counseling services," and a variance must be granted if he lived or worked within the exclusion zone. Id. at 421. A.C.O. 138.26 does not permit a variance for any reason, even if a person lives, works, or receives social services in the contested area. This interferes with a person's constitutional right of association and/or freedom of travel.

{¶ 28} Allowing officers, judges, and juries to consider the enumerated circumstances in A.C.O. 138.26(B) "sweeps within the prohibitions of the ordinance many things that may not be constitutionally punished under the First and Fourteenth Amendments." *Rowland*, 67 Ohio St.3d at 388. Accordingly, the revised ordinance is impermissibly overbroad. The state's assignment of error is overruled.

III

{¶ 29} Appellant's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

BELFANCE, P.J., and WHITMORE, J., concur.